**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Civil Action No.: 3:25-cv-00213**

| | | |
|---|---|---|
| **RONNIE EASON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT and** |
| | ) | **DEMAND FOR JURY TRIAL** |
| **SONABLATE CORP.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

Plaintiff, Ronnie Eason ("Eason" or "Plaintiff"), by and through counsel, brings this action against Defendant Sonablate Corp. ("Sonablate" or "Defendant") pursuant to Texas state law.

**THE PARTIES**

1. Eason is an adult individual who is a resident of Collin County, Texas.

2. Sonablate is a Delaware corporation registered to do business and in good standing in the State of North Carolina, with its principal place of business located at 10130 Perimeter Parkway, Suite 410, Charlotte, North Carolina 28216.

**JURISDICTION AND VENUE**

3. This Court has diversity jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and because Plaintiff and Defendant are citizens of different states.

4. This Court has personal jurisdiction because Defendant conducts business in Mecklenburg County, North Carolina, which is located within this judicial district.

5. Venue is proper in this judicial district because Defendant resides in this judicial district.

## PLAINTIFF'S FACTUAL ALLEGATIONS

6. Sonablate is a medical device manufacturer focusing on the treatment of prostate diseases.

7. In the Fall of 2023, Sonablate began actively recruiting Eason to join the company as its Vice President of Sales, Marketing, and Business Analytics.

8. On October 17, 2023, Dan Karl ("Karl"), Sonablate's Chief Commercial Officer, texted Eason the following:



9. On or around October 23, 2023, Eason accepted the position, in reliance on the promises made by Karl.

10. Eason then executed an employment agreement with Sonablate that reflected the promises made to him during the recruiting process, including a prorated end of year bonus and a performance/commission incentive bonus to be paid out monthly beginning in 2024. A true and correct copy of the parties' executed October 23, 2023 Employment Agreement ("Employment Agreement") is attached as Exhibit 1.

11. As specifically detailed in the Employment Agreement, Eason was induced to accept this position based on the following express promises: (a) Annual Base Salary of $200,000; (b) Health and Retirement Benefits; (c) Annual Performance Bonus/Commission target of $420,000; (d) 2023 End of Year Bonus of $33,000; and (e) Stock Options of 100,000 shares of Common Stock.

12. Throughout the tenure of his employment, Eason fully and completely performed his duties as the Vice President of Sales, Marketing, and Business Analytics.

13. Sonablate breached the Employment Agreement by failing to pay Eason the Performance Bonus/Commission owed to him as required by Section 4(c) of the Employment Agreement.

14. On February 15, 2024, Eason asked Karl about the status of his 2023 Year End Bonus and MBO Bonus, to which Karl responded as follows:

2:32
2
Dan
Thu, Feb 15 at 6:43 AM
Good morning

Brother, this may be the last thing you want to hear but my Q4 bonus and January MBO's did not hit the bank account....only my base salary.

Brother, please tell me those are going to be in there today.
I'm sorry, let me check with Louis. MBO's for January will pay end Feb. commissions pay at end of month for month prior.

It's BS.
Brother, this may be the last thing you want to hear but my Q4 bonus and January MBO's did not hit
iMessage

15. On or about February 16, 2024, Karl asked Richard Yang ("Yang'), Sonablate's Chief Executive Officer, and Louis Ta ("Ta"), VP of Corporate Affairs, about the status of the payments. Yang and Ta responded as follows:



16. That same day, Yang sent Eason the following message via Teams:



17. On February 16, 2024, Karl advised Eason that the money for the MBOs was assigned to cover payroll in the UK:



18. On February 27, 2024, Karl advised Eason that Sonablate would be paying the 2023 Year End Bonus on February 29, 2024 (a month past due) and stated that he anticipated the company would pay the January and February performance bonus/commissions on March 15, 2024.



19. Despite this representation, on March 24, 2024, Karl advised Eason that the performance/commissions would not be paid on March 15, 2024 as he previously represented. He further represented that he was working with leadership to get the sales team paid but could not provide any assurance that the funds would be paid before the end of month.



20. On the same day, March 14, 2024, Dena Fitch, Financial Planning & Analysis Manager for Sonablate, provided Karl with the following update:



21. To date, Sonablate has not paid Eason the bonus/commissions owed to him under the Employment Agreement.

22. Sonablate knew or should have known that Eason would not accept an offer of employment without the potential to earn the bonus/commissions promised to him during the recruitment process. Despite having no intention to follow through with their promises, Sonablate representatives told Eason what he needed to hear to secure Eason's acceptance of their job offer.

23. On or about March 28, 2024, Sonablate terminated Eason's employment.

**Count I – Breach of Contract**

24. Eason realleges and incorporates by reference all the paragraphs above in this Complaint as though fully set forth herein.

25. Eason and Sonablate are parties to a valid and enforceable contract.

26. Eason performed all duties and obligations required of him under the terms of the Employment Agreement.

27. Sonablate breached the Employment Agreement by failing and refusing to pay Eason the MBOs he earned.

28. Eason has suffered damages as a result of Sonablate's breach of contract.

**Count II – Promissory Estoppel**

29. Eason realleges and incorporates by reference all the paragraphs above in this Complaint as though fully set forth herein.

30. In addition to, or in the alternative, Sonablate made promises to Eason to pay him bonus/commissions. Eason reasonably and substantially relied on Sonablate's promises to his detriment. Eason's reliance on Sonablate's representations was foreseeable by Sonablate. Injustice can be avoided only by enforcing Sonablate's promises.

31. Defendant's conduct harmed Eason.

**Count III – Fraud / Fraud in the Inducement**

32. Eason realleges and incorporates by reference all the paragraphs above in this Complaint as though fully set forth herein.

33. Sonablate made numerous representations of material facts and promises to Eason including representations that Sonablate would provide him with guaranteed bonus/commission payments on a monthly basis if he accepted employment with Sonablate.

34. Sonablate's representations and promises were made to induce Eason to accept employment and remain employed by Sonablate. Eason relied on Sonablate's misrepresentations and promises when accepting, and continuing, his employment with Defendant.

35. Eason has suffered damages as a result of Sonablate's fraudulent action and is entitled to actual and exemplary damages.

**Count IV – Negligent Misrepresentation**

36. Eason realleges and incorporates by reference all the paragraphs above in this Complaint as though fully set forth herein.

37. Sonablate had a duty to Eason to act with reasonable care in providing information it knew was material to Eason's decision to accept employment.

38. Eason justifiably relied, to his detriment, on Sonablate's representations regarding the guaranteed compensation promised to him.

39. As a proximate cause of Defendant's negligent misrepresentations, Eason incurred and suffered, and will continue to incur and suffer, substantial monetary losses, mental anguish, emotional distress, reputational harm, and other losses to which he is entitled to compensatory damages.

## ATTORNEYS' FEES

40. Eason realleges and incorporates by reference all the paragraphs above in this Complaint as though fully set forth herein.

41. Eason has found it necessary to employ the services of attorneys to represent him and has agreed to pay reasonable fees and expenses incurred in this matter. Eason seeks recovery of his attorneys' fees and costs incurred in this matter pursuant to Section 38.001 of the Texas Civil Practice & Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Eason demands the following relief:

a) An award of actual damages;

b) An award of compensatory damages;

c) An award of punitive damages;

d) Pre-judgment interest at the highest rate allowed by law;

e) Post-judgment interest at the highest rate allowed by law;

f) An award of costs of this action; and

g) An award of reasonable attorney's fees.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all issues of fact.

Respectfully submitted,

/s/ Corey M. Stanton
Philip J. Gibbons, Jr., NCSB #50276
Corey M. Stanton, NCSB #56255
**GIBBONS LAW GROUP, PLLC**

14045 Ballantyne Corporate Place, Ste 325
Charlotte, North Carolina 28277
Telephone: (704) 612-0038
Facsimile: (704) 612-0038
E-Mail: phil@gibbonslg.com
corey@gibbonslg.com

*Attorneys for Plaintiff*